UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| GERRY P. ALBRIGHT, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 4:11-CV-1045 |
| § | |
| IBM LENDER BUSINESS PROCESS § | |
| SERVICES, INC., § | |
| § | |
| Defendant. § | |

## OPINION AND ORDER

Pending before the Court is the Motion for Summary Judgment (Doc. 28) filed by Defendant Seterus, Inc., f/k/a Lender Business Process Services, Inc.[1] ("Defendant," or "Seterus") on all claims made by Plaintiff Gerry P. Albright ("Plaintiff," or "Albright"), and the Motion for Partial Summary Judgment (Doc. 31) filed by Albright.[2] Having considered the motions and the responses thereto,[3] the summary judgment evidence, and the applicable law, the Court concludes that Defendant's motion should be granted and Plaintiff's motion denied.

**I. Background**

This is a foreclosure case in which Plaintiff states causes of action for breach of contract, fraud, and negligent misrepresentation. (Am. Compl., Doc. 52). Before considering the facts of

---

[1] Seterus notes, "Plaintiff wrongly identifies Defendant in his Original Petition as 'IBM Lender Process Services.' Defendant has correctly identified itself and is voluntarily appearing herein in said proper capacity." (Doc. 28 at 1 n.1).

[2] Although Albright did not file a separate motion, he inserted in his response to Seterus's motion that "not only is Seterus not entitled to Summary Judgment, but Mr. Albright is entitled to Partial Summary Judgment in the amount of $5,959.92." (Doc. 31 at 10). Seterus moved to strike that part of Albright's response, (Doc. 32), but Magistrate Judge Stacy denied that motion, (Order, Apr. 30, 2012, Doc. 40).

[3] Pl.'s Resp. to Def.'s Mot. for Summ. J. (Doc. 31); Def.'s Mot. for Leave to Supplement the Summ. J. Evidence (Doc. 33); Def.'s Reply in Supp. of its Am. Mot. for Final Summ. J. (Doc. 34); Pl.'s Resp. to Def.'s Mot. for Leave to Supplement Summ. J. Evidence & Pl.'s Mot. to Strike "Sham Aff." (Doc. 35); Def.'s Resp. to Pl.'s Mot. for Partial Summ. J., Subject to its Mot. to Strike (Doc. 39); Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. for Partial Summ. J., Subject to its Mot. to Strike (Doc. 42); and Pl.'s Surreply to Def.'s Reply in Supp. of Def.'s Am. Mot. for Final Summ. J. (Doc. 43).

the case, several evidentiary objections must first be addressed.

  A.  *Evidentiary Objections*

  Albright begins by making two related objections: first, he argues that Christopher Spence is not competent to testify for want of personal knowledge; second, that Seterus's records are inadmissible because Spence is not qualified to authenticate them. (Doc. 31 at 6; Doc. 31-3 at 2-4). Regarding Spence's competence to testify, Albright objects specifically to paragraphs seven through ten of Spence's declaration (Mar. 15, 2012, Doc. 28-1 Ex. A), (Doc. 31-6), citing Federal Rule of Civil Procedure 56(c)(4), which requires that affidavits be made on personal knowledge and by an affiant who is competent to testify on the matters stated, (Doc. 31 at 6). Paragraph ten simply contains Spence's testimony establishing that he does in fact meet that requirement, (*see* Doc. 28-1 Ex. A ¶ 10 (stating that Spence is "qualified to testify about the business records and recording practices of Seterus")), so the objection to that paragraph is unfounded. The other paragraphs contain testimony based on Spence's review of the records in question. The relevant rule in the Fifth Circuit is that courts may rely on the statements of affiants whose "personal knowledge and competence to testify are reasonably inferred from their positions and the nature of their participation in the matters to which they swore." *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 530 (5th Cir. 2005) (internal quotation marks omitted). Additionally, an affiant "may have personal knowledge of activities in which she has not actually participated. This includes situations where a manager of an organization can glean personal knowledge of the practices of that organization by participating in those practices or reviewing the organization's records." *Hamilton v. Trover Solutions, Inc.*, 104 F. App'x 942, 944 (5th Cir. 2004) (footnotes omitted). Considering Spence's position as a foreclosure specialist with Seterus, where he has served since November 8, 2010, and his testimony as to his review of the records,

(Doc. 28-1 Ex. A ¶¶ 2, 10), the Court finds that he has the requisite personal knowledge and competence to testify. This objection is overruled.

Next, Albright objects to the admission of two sets of documents, because Spence, who aims to authenticate them, "is <u>not</u> a custodian of records" and "is not qualified to offer testimony about record keeping." (Doc. 31 at 6). Therefore, Albright argues, the documents do not meet the business records exception to the hearsay rule. The specific records in question are the two attachments to the "Repayment Plan Agreement" (Doc. 28-1 Ex. A-3), the "Repayment Plan Schedule" (Doc. 28-1 Ex. A-3 at 57) and "Schedule of Payments" (Doc. 28-1 Ex. A-3 at 58), and the letter regarding the transfer of tax liens (June 29, 2010, Doc. 28-2 Ex. A-5). The Fifth Circuit has outlined the application of the business records exception as follows:

> A business record can be authenticated by testimony of either the "custodian" of the record or an "other qualified witness." We define "other qualified witness" as "one who can explain the record keeping of the organization and vouch that the requirements of Rule 803(6) are met." We have also stated that a business record can be admitted into evidence "where circumstances indicate that the records are trustworthy." We have affirmed the introduction of evidence even when the affiant neither prepared nor had first-hand knowledge of the preparation of the document, so long as the witness's testimony was sufficient to support the document's reliability.

*Travland v. Ector Cnty., Tex.*, 39 F.3d 319, at *4 (5th Cir. 1994) (footnotes omitted). In other words, the fact that that Spence is not a custodian of records is not determinative. As discussed above, Spence is a foreclosure specialist and has declared that he is "qualified to testify about the business records and recording practices of Seterus," (Doc. 28-1 Ex. A ¶¶ 2, 10), which is sufficient to meet the requirements of an "other qualified witness." Consequently, his authentication of Seterus's business records is adequate to establish their reliability, and these objections are overruled.[4]

---

[4] It should also be noted that these objections are misplaced. Regarding the schedules, Albright does not object to the Repayment Plan Agreement to which they are attached and of which they form a part. (*See* Doc. 52 ¶ 11 ("The

Finally, purportedly pursuant to Federal Rule of Evidence 106, Albright also asserts an objection to the "Loan Comments" (Doc. 28-2 Ex. A-4), which Seterus has "redacted to protect from disclosure of privileged communications," (Doc. 28 at 2 n.2). (Doc. 31-3 at 3). But Rule 106, also known as the rule of completeness, provides a basis for *in*cluding relevant evidence, not for *ex*cluding it. The rule states that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part . . . that in fairness ought to be considered at the same time." Fed. R. Evid. 106. Put another way, the purpose of the rule is "only [to] allow[ ] the *admission* of portions of a document that are relevant and necessary to qualify, explain, or place into context the portion *already introduced*." *United States v. Flores*, 293 F. App'x 283, 285 (5th Cir. 2008) (emphases added) (alterations and internal quotation marks omitted). Given this understanding of the rule, Albright's objection is incoherent. He does not object to Seterus's assertion of privilege, nor does he explain how the unredacted information, most relevant of which being the dates and amounts of his payments, requires context to be understood. In fact, Albright even incorporates that information into his own evidence as a party admission. (*See* Doc. 31-17). This objection is overruled.

B.  Facts

In April 2007, Albright purchased a condominium located at 1010 Rosine Street #202, Houston, Harris County, Texas 77019 (the "Property"). (Doc. 31-10 Ex. B). Albright financed the purchase by signing a promissory note (the "Note," Doc. 28-1 Ex. A-1) and a deed of trust (the "Deed," Doc. 28-1 Ex. A-2) (collectively, the "Loan Documents"), which encumbered the

---

document is in writing and has not been modified, rescinded or amended.")). Instead he claims that only one portion of the document does not meet the business records exception. His argument, however, is not so much one of admissibility as one of contractual ambiguity; that is, in reference to the agreement and its schedules, Albright states, "No schedule or document exist [sic] that bears the same titles referenced in the forbearance agreement." (Doc. 31 at 4). In other words, his real objection is to the discrepancies created by the wording of the contract, not to the admissibility of its contents. This issue will be discussed in more detail below. Regarding the letter, Albright's objection is misplaced because the relevant evidence is contained in the attachment to the letter, titled "Sworn Document Authorizing Transfer of Tax Lien," which is a sworn and notarized public record.

Property as security for the loan. In 2009, Albright defaulted on his loan, and BAC Home Loans Servicing, LP ("BAC"), which at that time was servicing the loan, sent him notices of default and of intent to foreclose. (Spence Dep. 40:24-41:13, Mar. 9, 2012, Doc. 31-8 to -9). The notice of default stated:

> The loan is in serious default because the required payments have not been made.
> . . . .
> You have the right to cure the default.
> . . . .
> If the default is not cured on or before November 18, 2009, the mortgage payments will be accelerated with the full amount remaining accelerated and becoming due and payable in full, and foreclosure proceedings will be initiated at that time.

(Doc. 31-13 at 1). Albright did not cure the default but did reach a forbearance agreement with BAC, effective January 14, 2010, titled "Repayment Plan Agreement." The agreement stated:

> The attached schedule ("Schedule") shows the total amount (the "Past Due Amount") you must pay to BAC Home Loans Servicing, LP in order to cure your delinquency, as of January 14, 2010.
> . . . .
> If foreclosure action relating to your Loan has commenced, it will <u>not</u> be canceled, but it will be postponed by BAC Home Loans Serving, LP provided there is no default by you under this Agreement. If you fail to comply with each and all of the terms and conditions of this Agreement, this Agreement, at BAC Home Loans Servicing, LP's option, shall terminate immediately and automatically without further notice to you and, except as otherwise provided herein, shall be of no further force and effect.

(Doc. 28-1 Ex. A-3 at 54). Attached to the agreement were two schedules, a "Repayment Plan Schedule" and a "Schedule of Payments." The former required one submission in the amount of $2,298.00 to be made no later than January 14, 2010; the latter listed a series of monthly payments of approximately $1,641.68 each to be made the first day of every month, from February 2010 through October 2010. (Doc. 28-1 Ex. A-3 at 57-58).

On June 1, 2010, the Loan Documents were transferred to Federal National Mortgage Association, and Seterus began servicing the loan. (Doc. 28-1 Ex. A ¶ 5). Meanwhile, Albright

had made the following payments: $2,298.00 on January 14, 2010; $1,641.68 on February 2; $1,641.68 on March 2; $1,641.30 on April 16; and $1,641.68 on May 25. (Doc. 28-1 Ex. A ¶ 7). On June 21 and July 16, 2010, Seterus received two more checks for $1,148.69 each, but refused to accept them because they were late and for an inadequate amount. (Docs. 31-14 to -15). Also in June, Seterus became aware that Albright had not paid his 2009 property taxes and paid them for him; soon thereafter, Seterus received a letter from Propel Financial Services, LLC, explaining that Albright had obtained a tax loan, thereby authorizing a tax lien to be placed on the Property. (Doc. 31-9 at 102:7-19; Doc. 28-2 Ex. A-5 at 299-300). Seterus determined that Albright had defaulted under the terms of the forbearance agreement and, on September 7, 2010, conducted a foreclosure sale. (Doc. 28-1 Ex. A ¶ 9; Doc. 31-11).

On December 27, 2010, Albright filed suit in state court, and, on March 21, 2011, Seterus filed its notice of removal to this Court. (Doc. 1). On May 5, 2012, Albright filed his amended complaint, asserting causes of action for fraud, negligent misrepresentation, and breach of contract. Seterus moves for summary judgment on all causes of action.

## II.     Legal Standard

Summary judgment is mandated if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of identifying evidence that no genuine issue of material fact exists, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and the court must view the evidence and all inferences drawn therefrom in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The substantive law governing the claims determines the elements essential to the outcome of the case and thus determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over

such a fact is genuine if the evidence presents an issue "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Id.* at 250.

### III. Discussion

#### A. Fraud and Negligent Misrepresentation

Albright states a claim for fraud, alleging that "Defendant [fraudulently] represented to Plaintiff that the amounts paid under the Repayment Agreement were to be accepted and the loan reinstated," and a claim for negligent misrepresentation, alleging that Defendant "supplied false information to Mr. Albright for his guidance in respect to the property." (Doc. 52 ¶¶ 12-13). When, however, an "injury is only the economic loss to the subject of a contract itself," the economic loss rule applies and "the action sounds in contract alone," not in tort. *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 417 (Tex. 2011) (quoting *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 495 (Tex. 1991)). Such is the case here, where the causes of action are based on contractual duties under a loan agreement and the recovery sought is the property that is the subject of the agreement. *See Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001) (rejecting the argument "that tort damages for fraud can be recovered even where the plaintiff suffers only economic loss related to the contract's subject matter"); *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 663 (Tex. 1998) (concluding that a "negligent misrepresentation claim must fail for lack of any independent injury"). Furthermore, Plaintiff implicitly acknowledges the futility of pursuing these causes of action by not addressing them in his response, thereby abandoning them. *See Mid-Continent Cas. Co. v. Bay Rock Operating Co.*, 614 F.3d 105, 113 (5th Cir. 2010) (quoting *Grenier v. Cyanamid Plastics, Inc.,* 70 F.3d 667, 678 (1st Cir. 1995) ("Even an issue raised in the complaint but ignored at summary judgment may be deemed waived.")). Accordingly, Defendant is entitled to summary judgment on these claims.

B.   *Breach of Contract*

Under Texas law, "the essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App. 2001)) (alteration and internal quotation marks omitted). Therefore, Albright can survive summary judgment only by adducing evidence, or evidence of a factual dispute, for each of these elements. Seterus argues that Albright cannot meet this burden because he failed to perform by (i) defaulting on the repayment plan schedule and (ii) failing to pay his property taxes on time and subsequently authorizing priority tax liens to be placed on the Property. (Def.'s Mot. 7-9).

1.   *Payments*

Seterus's argument is that Albright breached the forbearance agreement by submitting two payments of $1,148.69 each on June 22 and July 16, 2010, (Docs. 31-14 to -15), which should have been for $1,641.68 each on June 1 and July 1, 2010, respectively, (Doc. 28-1 Ex. A-3 at 58). Albright denies that that he failed to comply with the Schedule of Payments because, he asserts, there was no such schedule with which to comply. Albright explains, "The actual agreement reduced to writing between the parties references three (3) schedules. The only way in which such schedules are identified is by title. . . . No schedule or document exist [sic] that bears the same titles referenced in the forbearance agreement." (Doc. 31 at 3-4). Albright is correct that the text of the Loan Repayment Agreement references three schedules, the "Total Amount Due Schedule," "Application of Voluntary Funds Schedule," and "Special Forbearance Plan Agreement Payment Schedule," none of which share the same name as either of the two

documents actually attached to the agreement. Yet there *are* schedules attached to the agreement, so it cannot be said that there is a question of existence; instead, given the differences between the text of the agreement and the titles and number of its attachments, the question becomes one of contractual ambiguity.

The primary concern in conducting this examination is ascertaining the parties' intent as it is expressed within the four corners of the writing. *Amigo Broad., LP v. Spanish Broad. Sys., Inc.*, 521 F.3d 472, 480 (5th Cir. 2008). "To achieve this objective, 'courts should examine and consider *the entire writing* in an effort to harmonize and give effect to *all of the provisions* of the contract so that none will be rendered meaningless.'" *Id.* (quoting *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex. 1983)). Ambiguity exists if the contract "is subject to two or more reasonable interpretations," but if "it can be given a definite or certain legal meaning," no ambiguity will be found. *Addicks Servs., Inc. v. GGP-Bridgeland, LP*, 596 F.3d 286, 294 (5th Cir. 2010). Furthermore, the contract "is not ambiguous because it suffers from mere uncertainty or lack of clarity," and "failure to include more express language of the parties' intent does not create an ambiguity when only one reasonable interpretation exists." *Instone Travel Tech Marine & Offshore v. Int'l Shipping Partners, Inc.*, 334 F.3d 423, 431 (5th Cir. 2003) (internal quotation marks omitted).

This standard provides clear guidance in interpreting the terms of the contract and resolving the parties' dispute. The Repayment Plan Agreement refers to schedules containing the past due amount and ongoing monthly payment obligations, and the attached schedules do, in fact, contain that information. More specifically, the text of the agreement begins by referencing an "attached schedule ('Schedule')" and subsequently states, "We have agreed that you will repay the Past Due Amount over a several month period by making the installment payments

shown on the Schedule." (Doc. 28-1 Ex. A-3 at 54). Two documents attached to the forbearance agreement, a "Repayment Plan Schedule" and a "Schedule of Payments," then list payment dates, amounts due, and an anticipated cure date. (Doc. 28-1 Ex. A-3 at 57-58). While the discrepancy in titles is indicative of imprecise drafting and inattention to detail, this is not a case of conflicting or inherently ambiguous repayment terms: only one payment plan exists, and the dates and amounts prescribed therein are clear. These facts are not in dispute, and the Court can find within them no ambiguity. Albright failed to make payments on time and in the required amounts; consequently, he failed to perform under the terms of the Repayment Plan Agreement.

  2. *Taxes*

Seterus argues that Albright committed a second breach by failing to pay property taxes on time and allowing priority tax liens to be placed on the Property. Albright does not dispute this failure or his subsequent authorization of a tax lien in order to make a late payment. Nonetheless, he moves for partial summary judgment on this issue, claiming that the outcome of these events is that Seterus owes him $5,959.92. Albright's claim has no merit.

  According to the terms of the Repayment Plan Agreement:

> If [BAC] does not maintain an impound account with respect to your Loan, it is your responsibility to pay all property taxes and premiums for insurance by their due date, as required in your Loan documents. . . . The failure to pay property taxes or insurance before their due date . . . shall constitute an event of default, and, at [BAC's] option, this Agreement shall terminate immediately and automatically without further notice to you.

(Doc. 28-1 Ex. A-3 at 55). In June 2010, Seterus learned that Albright had not paid the 2009 tax on the Property and paid the $5,959.92 amount for him. (Doc. 31-9 at 101:10-102:10). Also in June 2010, unbeknownst to Seterus, Albright took out a tax loan in the same amount, thereby authorizing a priority tax lien to be placed on the Property, (Doc. 28-2 at 300), and resulting in double payment to the Harris County Tax Office. Afterward, Harris County issued a refund

10 / 11

check to Seterus in the amount of $5,959.92. (Doc. 31-9 at 102:7-22). Albright now claims that he is owed that money. (Doc. 31 at 10 ("[N]ot only is Seterus not entitled to Summary Judgment, but Mr. Albright is entitled to Partial Summary Judgment in the amount of $5,959.92.")).

Two points are clear: first, Albright owned the Property in 2009 and was responsible for paying the 2009 property tax; second, the only reason Harris County issued a refund check to Seterus is that Seterus's attempt to pay Albright's delinquent tax constituted double payment. In other words, had Albright paid on time, no refund would have issued. It is impossible under such circumstances to conclude that Albright, rather than the party that tried to cover for his delinquency, is justified in laying claim to the refund check. Furthermore, by failing to pay his property tax before the due date, Albright defaulted on the Repayment Plan Agreement. This makes two events of default, and each event on its own entitles Seterus to summary judgment.

### IV. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Plaintiff's motion for partial summary judgment (Doc. 31) is **DENIED**; it is further

**ORDERED** that Defendant's motion for complete summary judgment (Doc. 28) is **GRANTED** and Plaintiff's claims are **DISMISSED**.

**SIGNED** at Houston, Texas, this 14th day of March, 2013.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE